# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

MICHAEL TRACY MCLAUGHLIN

    Petitioner,

vs.

BRIAN WILLIAMS, et al.,

    Respondents.

Case No. 2:11-cv-00884-JCM-VCF

**ORDER**

    Before the court are the second amended petition for writ of habeas corpus (#27),[1] respondents' answer (#58), and petitioner's reply (#63).  The court finds that petitioner is not entitled to relief, and the court denies the petition.

    The facts of the case are not disputed.  Petitioner entered a Clark County Social Services office in Henderson, Nevada, looking for rental assistance.  He did not have an appointment, but the staff told him to wait.  Around lunch time, it was announced that the office would be closing for lunch and that those who were waiting would need to come back after lunch.  A staff member told petitioner that the announcement did not apply to him and that a social worker would see him shortly.  Petitioner went to the restroom.  When he returned, he produced a knife and started attacking people.  Three were stabbed multiple times, one had his head split open with a chair thrown by petitioner, and others were hit.  Henderson police responded shortly and took petitioner into custody.

---

[1] Petitioner titled this as a first amended petition.

Petitioner was charged with three counts of attempted murder with the use of a deadly weapon, for the three stabbing victims, one count of battery with the use of a deadly weapon, for the victim who was hit by a chair, and one count of burglary while in possession of a deadly weapon. Ex. 47 (#29).  The prosecution also gave notice that it intended to seek adjudication of petitioner as a habitual criminal pursuant to Nev. Rev. Stat. § 207.010, because six times previously petitioner had been convicted of felonies.  Petitioner went to trial.  The defense was lack of intent, and for the charges of attempted murder with the use of a deadly weapon, petitioner asked the jury to find him guilty of the lesser-included offenses of battery with the use of a deadly weapon.  The jury found him guilty as charged. Ex. 54 (#29).  At sentencing, the judge noted that petitioner qualified for habitual-criminal adjudication, but the sentences authorized for the underlying crimes themselves were sufficient to imprison petitioner for the time that the judge felt appropriate. Ex. 61 at 19-20 (#29).  The state district court entered a judgment of conviction on all the charges. Ex. 63 (#29). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 88 (#30).

Petitioner then filed his first state habeas corpus petition while his direct appeal still was pending. Ex. 80 (#30).  This petition never received a ruling.  Petitioner filed another petition. Ex. 102 (#30).  The state district court held a hearing on the matter without appointing counsel for petitioner. Ex. 112 (#30).  The state district court then denied the petition. Ex. 114 (#30). Petitioner appealed.  The Nevada Supreme Court reversed, holding that the district court needed to appoint counsel for petitioner. Ex. 120 (#31).  Counsel was appointed, and he filed a supplemental petition. Ex. 123 (#31).  The state district court held an evidentiary hearing. Ex. 125 (#31).  The court then denied the petition. Ex. 130 (#31).  Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 137 (#32).

Petitioner then commenced this action.  The court appointed counsel, who filed the second amended petition (#27).  Respondents moved to dismiss (#44) ground 5 in full and ground 1, as expanded from what petitioner presented in his first state habeas corpus petition, were unexhausted. Meanwhile, petitioner had filed a second state habeas corpus petition. Ex. 165 (#49).  The state district court dismissed the petition.  It held that ground 1 of that petition, which is equivalent to ground 1 in the second amended petition before this court, was barred by the law of the case.  The

state district court also held that the petition in general was untimely under Nev. Rev. Stat. § 34.726, successive under Nev. Rev. Stat. § 34.810, and barred by laches under Nev. Rev. Stat. § 34.810. Ex. 169 (#49). Petitioner appealed. The Nevada Supreme Court determined that the petition was procedurally barred under Nev. Rev. Stat. §§ 34.726, 34.800, and 34.810. Ex. 175 at 1 (#63) The Nevada Supreme Court also held that the dismissal under the law-of-the-case doctrine was an incorrect reason, but that the result was correct. Id. at 2-3 (#63).

After the Nevada Supreme Court's ruling, this court denied the motion to dismiss. Order (#57). The court concluded that ground 5 was exhausted. The court concluded that ground 1 was exhausted by the Nevada Supreme Court's ruling on the appeal from the dismissal of the second state habeas corpus petition. The court anticipated that respondents would argue that ground 1, in its current form, is procedurally defaulted, and that petitioner would argue that ineffective assistance of his first state habeas corpus counsel was good cause to excuse the default. The court directed the parties to address those arguments in the answer and reply.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

1  <u>Richter</u>, 562 U.S. at 100.  "For purposes of § 2254(d)(1), 'an unreasonable application of federal

2  law is different from an incorrect application of federal law.'"  <u>Id.</u> (citation omitted).  "A state

3  court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

4  jurists could disagree' on the correctness of the state court's decision."  <u>Id.</u> (citation omitted).

5  　　　[E]valuating whether a rule application was unreasonable requires considering the rule's
   　　　specificity.   The more general the rule, the more leeway courts have in reaching outcomes in
6  　　　case-by-case determinations.

7  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

8  　　　Under § 2254(d), a habeas court must determine what arguments or theories supported or, as
   　　　here, could have supported, the state court's decision; and then it must ask whether it is
9  　　　possible fairminded jurists could disagree that those arguments or theories are inconsistent
   　　　with the holding in a prior decision of this Court.
10

11 <u>Richter</u>, 562 U.S. at 102.

12 　　　As a condition for obtaining habeas corpus from a federal court, a state prisoner must show
   　　　that the state court's ruling on the claim being presented in federal court was so lacking in
13 　　　justification that there was an error well understood and comprehended in existing law
   　　　beyond any possibility for fairminded disagreement.
14

15 <u>Id.</u>, at 103.

16 　　　Ground 1 is a claim that petitioner's trial counsel provided ineffective assistance because

17 trial counsel did not present a defense of voluntary intoxication.  If successful, that defense would

18 have meant that petitioner lacked the specific intent to kill, which is an element of the crime of

19 attempted murder.  Consequently, for the three counts of attempted murder, the jury would have

20 found petitioner guilty of the lesser-included crimes of battery with the use of a deadly weapon.

21 Petitioner did present this claim in his first state habeas corpus petition, but in his amended federal

22 petition he presented four affidavits from people who stated that petitioner had smoked

23 methamphetamine the night before the attack at the social services office or that he appeared high

24 on drugs during or shortly after the attack.

25 　　　The court disagrees with petitioner that the Nevada Supreme Court reached the merits of the

26 expanded ground 1.  It held that the second state habeas corpus petition was procedurally barred by

27 Nev. Rev. Stat. §§ 34.726, 34.800, and 34.810.  Ex. 175 at 1 (#63).  It held that the district court's

28 decision on the law of the case reached the correct result, but for the wrong reason.  <u>Id.</u> at 2-3 (#63).

-4-

1    This is not a case in which the Nevada Supreme Court had alternative grounds for dismissal; the

2    Nevada Supreme Court had only one ground, a procedural bar.  Ground 1, as expanded, is

3    procedurally defaulted.

4         As anticipated, petitioner argues that the ineffective assistance of the counsel in his first state

5    habeas corpus petition is good cause to excuse the procedural default of ground 1.

6         [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in
     a collateral proceeding, a prisoner may establish cause for a default of an
7         ineffective-assistance claim in two circumstances.  The first is where the state courts did not
     appoint counsel in the initial-review collateral proceeding for a claim of ineffective
8         assistance at trial.  <u>The second is where appointed counsel in the initial-review collateral
     proceeding, where the claim should have been raised, was ineffective</u> under the standards of
9         <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To overcome the default, a prisoner must
     also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a
10        substantial one, which is to say that the prisoner must demonstrate that the claim has some
     merit. <u>Cf. Miller–El v. Cockrell</u>, 537 U.S. 322 (2003) (describing standards for certificates
11        of appealability to issue).

12   <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) (emphasis added).  In Nevada, unless the district court

13   conducted an evidentiary hearing before the direct appeal, which did not happen in this case, a claim

14   of ineffective assistance of counsel must be raised in a post-conviction habeas corpus petition.

15   <u>Gibbons v. State</u>, 634 P.2d 1214, 1216 (Nev. 1981).

16        Also as anticipated, the question of whether the expansion of ground 1 presents a substantial

17   claim of ineffective assistance of counsel collapses into the evaluation of ground 1 as presented to

18   the state courts in the first state habeas corpus proceedings.

19        A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense

20   attorney's representation "fell below an objective standard of reasonableness," <u>Strickland v.</u>

21   <u>Washington</u>, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced

22   the defendant such that "there is a reasonable probability that, but for counsel's unprofessional

23   errors, the result of the proceeding would have been different," <u>id.</u> at 694.  "[T]here is no reason for

24   a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to

25   address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u>

26   at 697.

27        <u>Strickland</u> expressly declines to articulate specific guidelines for attorney performance

28   beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

1    duty to advocate the defendant's cause, and the duty to communicate with the client over the course

2    of the prosecution.  466 U.S. at 688.  The court avoided defining defense counsel's duties so

3    exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

4    such set of rules would interfere with the constitutionally protected independence of counsel and

5    restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

6          Review of an attorney's performance must be "highly deferential," and must adopt counsel's

7    perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

8    Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

9    conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

10   overcome the presumption that, under the circumstances, the challenged action 'might be considered

11   sound trial strategy.'" Id. (citation omitted).

12         The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

13   proceeding with a reliable outcome.  See Strickland, 466 U.S. at 691-92.  See also Jennings v.

14   Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002).  Consequently, a demonstration that counsel fell

15   below an objective standard of reasonableness alone is insufficient to warrant a finding of

16   ineffective assistance.  The petitioner must also show that the attorney's sub-par performance

17   prejudiced the defense.  Strickland, 466 U.S. at 691-92.  There must be a reasonable probability that,

18   but for the attorney's challenged conduct, the result of the proceeding in question would have been

19   different. Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence

20   in the outcome." Id.

21         The Nevada Supreme Court summarily affirmed the state district court on this ground.  Ex.

22   137 (#32).  The state district court held:

23         Nevada Revised Statute 193.220 provides that "whenever the actual existence of . . . intent is
           a necessary element . . . the fact of [the defendant's] intoxication may be taken into account.
24         No physical evidence support's [sic] Mr. McLaughlin's claim of intoxication.  Trial counsel
           testified as to the risks inherent in portraying a criminal defendant to a jury as a drug addict.
25         Based on that testimony, this Court finds trial counsel's failure to raise the defense of
           voluntary intoxication to be a strategic decision, made intentionally and effectively.  Even if
26         it were ineffective, there was overwhelming evidence brought against Mr. McLaughlin, and
           there is no reasonable likelihood the defense would have changed the outcome at trial.  Mr.
27         McLaughlin's first claim for ineffective assistance of counsel is denied.

28

                                                    -6-

1    Ex. 130 at 3 (#31).  To establish a defense of voluntary intoxication, "the evidence must show not

2    only the defendant's consumption of intoxicants, but also the intoxicating effect of the substances

3    imbibed and the resultant effect on the mental state pertinent to the proceedings."  Nevius v. State,

4    699 P.2d 1053, 1060 (Nev. 1985).

5        At the evidentiary hearing, trial counsel testified that he knew that petitioner had a history of

6    drug abuse, having represented petitioner in the past, and he knew that the medical records of the

7    date of the attack noted that petitioner had ingested marijuana, but trial counsel had no recollection

8    of petitioner telling him that petitioner was under the influence of drugs at the time of the attack.

9    Ex. 125 at 6-7 (#31).  On cross-examination, trial counsel testified that he would have pursued a

10   defense of voluntary intoxication if he had known of the possibility.  Id. at 21-22.  Counsel then

11   explained that the voluntary-intoxication defense had pitfalls: Jurors are resistant to the argument

12   that a person cannot form intent because they are high on narcotics, and jurors in general have some

13   prejudices against people who are addicted to narcotics.  Id. at 22.

14       Counsel also admitted that there were some facts contradicting the idea that petitioner could

15   not form intent.  Petitioner had entered the social-services offices and filled out forms.  Ex. 125 at

16   23 (#31).  He interacted with a social worker who had interacted with him in the past, and she could

17   have established that he was acting consistently with the previous time.  Id. at 24.  One of the

18   employees had been stabbed in her abdomen and had to block her neck with her hand to keep

19   petitioner from stabbing her in the neck.  Id.

20       Counsel also testified that there was no physical evidence that petitioner was high on

21   methamphetamine, because there were no medical test reports that he had methamphetamine in his

22   system.  Id. at 22-23 (#31).  Consequently, petitioner would have needed to testify, which would

23   have been a problem because the prosecution would have been able to impeach him with at least

24   some of his prior felony convictions.  Id.

25       At the evidentiary hearing, petitioner testified that he had smoked methamphetamine the

26   previous night, until around 3:00 a.m. the day of the attack.  He arrived at the social services office

27   around 10:30 a.m. to 11:00 a.m.  Ex. 125 at 37 (#31).  He also testified that he had told trial counsel

28   that he had smoked methamphetamine the night before the attack.  Id.  Petitioner had been kicked

1   out of his brother's apartment.  He went to the social services office because he knew that he had

2   left some keys there during an earlier visit.  He also completed a form asking to see a social worker,

3   because he wanted rental assistance and he hoped that the office would help him.  Id. at 37-38.

4   After the attack and his arrest, he was taken to the hospital.  He remembered receiving stitches to

5   close cuts in his hands, a blood draw, and telling the medical staff that he had used marijuana.  He

6   said that he did not disclose that he had used methamphetamine because it was socially

7   unacceptable.  Id. at 40-41.

8           At trial, the three stabbing victims testified to the repeated and directed attacks of petitioner.

9   Kathryn Atkinson was stabbed in the side, then petitioner tried to cut her throat and she covered it

10  with her hands, then petitioner stabbed her in the stomach.  Ex. 49 at 105-07 (#29).  Steven Glenn

11  was stabbed in the chest, it would have been the heart, but he moved out of the way.  Ex. 50 at 30

12  (#29).  Petitioner would have stabbed him again in the chest, but he moved out of the way.  Id. at 32.

13  Susan Rhodes was stabbed multiple times.  Ex 50 at 68-70 (#30).  Then he hit her with a chair.  Id.

14  at 71.  Then he kicked her in the eye and in the chest.  Id. at 72.

15          The state district court's determination that petitioner suffered no prejudice because of the

16  evidence against him is not only reasonable, but this court agrees with it fully.  Furthermore, the

17  affidavits that petitioner presents now do not make the claim of ineffective assistance any more

18  substantial.  If the people in the affidavits testified at trial the same way as described in the

19  affidavits,[2] they would have established that petitioner had ingested methamphetamine and was

20  under its influence.  However, they would not have established that petitioner was so intoxicated

21  that he was unable to form the specific intent to kill.  No physical evidence of methamphetamine

22  was found in petitioner's blood, which meant that petitioner would have needed to testify to the

23  intoxicating effect of methamphetamine and its effect on his mental state.  See Nevius, 699 P.2d at

24  1060.  Setting aside the risks of a person with petitioner's criminal record testifying in his own

25  defense, his testimony would not have helped him.  Cross-examination at trial would have elicited

26

27

28          [2]Two of these affidavits actually are hearsay declarations by the investigator for the Federal
    Public Defender.

1    the same facts that the cross-examination at the evidentiary hearing elicited.  At the time petitioner

2    was under the influence of methamphetamine, he went to the social services office because he knew

3    that they had his keys.  He also knew that they might be able to provide him rental assistance.  He

4    was able to complete a form with at least his name and social security number.  He asked the

5    receptionist for rental assistance.  Then he attacked people.  After his arrest, he went to the hospital.

6    He remembers receiving stitches.  He remembers medical staff taking a blood draw.  He told the

7    staff that he had ingested marijuana.  He did not tell the staff that he had ingested

8    methamphetamine, because use of methamphetamine is socially unacceptable.  It is a strange form

9    of intoxication that allows petitioner to plan his day, make requests, and distinguish between the

10   levels of social acceptance of the use of different types of illegal drugs, yet keeps him from forming

11   the intent to kill in the middle of it all.  There is no reasonable likelihood that the jury would accept

12   petitioner's explanation once the prosecution was through with him.

13         The nature of petitioner's attacks also show that petitioner was able to form the specific

14   intent to kill.  He stabbed people in the torso.  He tried to stab Steven Glenn in the middle of the

15   chest, at or near the heart.  He tried to cut Kathryn Atkinson's throat, but she fended off the knife

16   with her hands.  He stabbed Susan Rhodes, went away, and returned to batter her some more.  All

17   the knife wounds of the victims either were in the locations of vital organs or were in less-vital areas

18   only because the victims were able to deflect the blows.  Based upon this evidence, the jury easily

19   could infer that petitioner had the specific intent to kill.

20         Ground 1, either as alleged in the first state habeas corpus petition or as alleged in the second

21   amended petition, is without merit.

22         Reasonable jurists might debate this court's finding, and the court will issue a certificate of

23   appealability on this ground.

24         Ground 2 is a claim of due process and fair trial violations when a police officer and the

25   prosecutor improperly referred to the Columbine High School shootings.  "The relevant question is

26   whether the prosecutors' comments so infected the trial with unfairness as to make the resulting

27   conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal

28   quotation omitted).  See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Henderson

1  police officer Christopher Smith testified that he, another officer in his car, and third officer in a

2  patrol car responded to the emergency call:

3       Q       Did you meet before you approached the building

4       A       Yes.

5       Q       What did you decide to do?

6       A       Basically, put our active shooter plan into effect.

7       Q       What is active shooter plan?

8       A       It's, basically, we developed a plan after Columbine where if somebody actively is
         hurting people inside a building, whether it be gunfire, stabbing, baseball bat, actively
9        committing crimes to harm people inside a structure we, basically, come up with a cell
         of—we try to keep four officers, but at that point all we had was three.  There were no other
10       officers coming, so at that point we decided to approach the building.

11  Ex. 50 at 104-05 (#29).  In the closing argument, the prosecutor stated:

12       You know, it's interesting when the police had an interesting perspective when they came
         upon the scene.  You'll remember it was Officer Pollard, Officer Smith, and Officer Tindall.
13
         As I believe Officer Smith testified, they treated it like a Colombine [sic] type of shooting.
14       They were going to form a small group and then get stacked up in a line to try to take on the
         attacker.
15
         They only had three.  They decided it was so important, so pressing they would go in with
16       three instead of four.  They formed that line and they basically got formed up just outside the
         steps of the social services building.
17

18  Ex. 52, at 13-14 (#29).  On this issue, the Nevada Supreme Court held:

19       The prosecution's reference to the Columbine shooting did not amount to prejudicial error.
         McLaughlin contends that one of the State's witnesses sought to inflame the jury and appeal
20       to its passions and emotions by referring to the Columbine shooting.  He further argues that
         this improper appeal to the passions and emotions of the jury denied him his due process
21       rights.  We disagree.

22       The State's witness made a passing remark about the Columbine shooting when describing
         the method the police officers used to approach the Clark County Social Services building
23       during the attack.  The prosecution subsequently made a passing remark during closing
         argument that the officers who responded to the scene treated the scene like a "Col[u]mbine
24       type of shooting."  Unlike the facts supporting this court's holding in Collier v. State, here
         the prosecutor commented on a matter in evidence.  The prosecutor merely referred to the
25       testimony that was in evidence, namely, an officer's testimony that the officers implemented
         a plan of entry that had been developed by law enforcement to deal with Columbine-type
26       situations.

27       We conclude that the inadvertent reference to Columbine by the State's witness, and the
         prosecution's subsequent reference to Columbine during closing argument, were not patently
28       prejudicial and did not amount to a denial of due process.  Therefore, it was harmless error.

-10-

1   Ex. 88 at 6 (#30) (footnote omitted).  There never was any doubt that petitioner was the assailant.

2   The references to Columbine were not a direct comparison, but an explanation why the officers

3   acted as they did.  Given the events, the Nevada Supreme Court reasonably could have concluded

4   that these references to the Columbine High School shootings did not make the trial fundamentally

5   unfair.

6            Reasonable jurists would not find the court's determination on this ground to be debatable or

7   wrong, and the court will not issue a certificate of appealability for this ground.

8            Ground 3 is a claim of prosecutorial misconduct for disparaging the defense and for

9   inflaming the passions of the jury On this issue, the Nevada Supreme Court held:

10          The prosecution did not commit prosecutorial misconduct.  McLaughlin contends the
            prosecution committed prosecutorial misconduct by ridiculing and degrading the defense,
11          and by appealing to the passions of the jury.  McLaughlin asserts that the prosecution's
            closing arguments were mocking, and that the district court erred by failing to intervene sua
12          sponte to control the inappropriate comments.

13          This court has repeatedly held that the prosecutor has a "duty not to ridicule or belittle the
            defendant or his case."  It is also improper to ridicule or belittle a defense theory.
14
            A defendant has a right to a fair trial, but not necessarily a perfect one.  The defendant must
15          show "that the remarks made by the prosecutor were 'patently prejudicial.'"  It is not enough
            that a prosecutor's comments are "'undesirable or even universally condemned.'"  The
16          relevant inquiry is whether the prosecutor's statements so contaminated the proceedings with
            unfairness as to make the result a denial of due process.  In addition, "'a criminal conviction
17          is not to be lightly overturned on the basis of a prosecutor's comments standing alone,'" and
            the improper remarks must be read in context.
18
            While some of the prosecutor's comments were improper, we cannot find any statements
19          that rise to the level of prosecutorial misconduct given the facts of this case.  Namely, at
            closing argument the prosecution opined that McLaughlin's theory that he did not intend to
20          kill the victims was "ridiculous" and "ludicrous," and commenced a short diatribe by
            comparing the theory to the defendant's acts at the scene of the crime.  Given the context of
21          the prosecutor's improper remarks, the violent nature of the crimes, and the substantial
            evidence against McLaughlin, we conclude that the prosecutor's comments simply did not
22          rise to the level of prosecutorial misconduct.

23          The district court only has the duty to intervene sua sponte when there is obvious
            prosecutorial misconduct and endangerment of a defendant's right to a fair trial.  Here, the
24          district court did not err in failing to intervene sua sponte because the prosecutor's remarks
            did not endanger McLaughlin's right to a fair trial.
25
26   Ex. 88 at 7-8 (#30) (footnotes omitted).  Regardless of what the prosecutor said in the argument, the

27   jury heard all the evidence at trial.  The jury easily could infer the intent to kill necessary to find

28

1   petitioner guilty of attempted murder.  Consequently, the Nevada Supreme Court reasonably could

2   have concluded that the prosecutor's remarks did not make the trial fundamentally unfair.

3           Reasonable jurists would not find the court's determination on this ground to be debatable or

4   wrong, and the court will not issue a certificate of appealability for this ground.

5           Ground 4 is a claim that the jury instructions the prosecution of the obligation to prove every

6   element of attempted murder, particularly the specific intent to kill.  On this issue, the Nevada

7   Supreme Court held:

8           The district court's jury instructions were correct as a matter of law, and therefore,
            McLaughlin's assignment of error is without merit.  McLaughlin contends that Jury
9           Instruction No. 8 inaccurately defines Nevada law regarding intent, and that it misled the
            jury.  He asserts that an instruction on implied malice was given when the crime of
10          attempted murder requires an instruction on express malice.  McLaughlin further contends
            that the improper jury instruction denied him his constitutional right to due process and a fair
11          trial.  We disagree.

12          An "attempt" is an "act done with the intent to commit a crime, and tending but failing to
            accomplish it."  Attempted murder is a specific intent crime, wherein the state must prove
13          the specific intent to kill.  Pursuant to NRS 193.200, intent "is manifested by circumstances
            connected with the perpetration of the offense."  Furthermore, criminal intent may be proven
14          as a deduction from declarations or acts that tend to show that the defendant intended to do
            what he did.
15
            Express malice is defined under NRS 200.020(1) as "that deliberate intention unlawfully to
16          take away the life of a fellow creature, which is manifested by external circumstances
            capable of proof."
17
            We conclude that the district court properly instructed the jury regarding malice.  The
18          contested jury instruction provided the proper language that guilt may be proven by "direct
            and circumstantial" evidence.  The instruction states that the jury may "infer," or deduce; the
19          existence of a party's state of mind "from the circumstances disclosed by the evidence."
            This language is merely a restatement that circumstantial evidence may be considered by the
20          jury to determine guilt beyond a reasonable doubt.  Therefore, the instruction is a correct
            statement of the law, and the court did not err in giving the instruction.
21

22  Ex. 88 at 8-10 (#30) (footnotes omitted).  As respondents note, the instructions have to be read as a

23  whole.  Instruction 7 states:

24          Attempted murder is the performance of an act or acts which tend, but fail, to kill a human
            being, when such acts are done with express malice, namely, with the deliberate intention
25          unlawfully to kill.

26  Ex. 53 (#29).  Instruction 8, the challenged instruction, states:

27          The prosecution is not required to present direct evidence of a defendant's state of mind as it
            existed during the commission of a crime.  The jury may infer the existence of a particular
28          state of mind of a party or a witness from the circumstances disclosed by the evidence.

-12-

1    Id.  Those two instructions, read together, restate Nev. Rev. Stat. § 200.020(1), which allows for the

2    proof of express malice through circumstantial evidence.  Instruction 18 defined the types of

3    evidence:

> There are two types of evidence; direct and circumstantial.  Direct evidence is the testimony
> of a person who claims to have personal knowledge of the commission of the crime which
> has been charged, such as an eyewitness.  Circumstantial evidence is the proof of a chain of
> facts and circumstances which tend to show whether the Defendant is guilty or not guilty.
> The law makes no distinction between the weight to be given either direct or circumstantial
> evidence.  Therefore, all of the evidence in the case, including the circumstantial evidence,
> should be considered by you in arriving at your verdict.

8    Id.  In other words, in this case the prosecution does not need to rely upon a statement or confession

9    by petitioner to establish the intent to kill.  The jury could infer it from the circumstances, as the

10    court has held in its discussion on ground 1.  The Nevada Supreme Court reasonably could have

11    concluded that the jury instructions stated the law correctly and did not diminish the prosecution's

12    burden of proof.

13         Reasonable jurists would not find the court's determination on this ground to be debatable or

14    wrong, and the court will not issue a certificate of appealability for this ground.

15         Ground 5 is a claim that the prosecution elicited testimony that referred to petitioner's post-

16    arrest silence.  An officer testified that he attempted to interview the suspect.  On this issue, the

17    Nevada Supreme Court held:

> The State's comment on McLaughlin's post-arrest silence was harmless.  McLaughlin
> contends that the State violated his post-arrest right to remain silent when one of the State's
> witnesses improperly testified that he attempted to interview the suspect.  He further asserts
> that this testimony violated his Fifth Amendment and state constitutional rights.  We
> disagree.

> The State cannot comment upon a defendant's post-arrest silence.  Furthermore, this court
> has held that "a prosecutor also cannot use post-arrest, pre-Miranda silence to impeach a
> defendant."

> However, this court has stated that reversal "will not be required if the prosecutor's
> references to the defendant's post-arrest silence are harmless beyond a reasonable doubt."
> Comments on the defendant's post-arrest silence are harmless beyond a reasonable doubt if
> (1) at trial there is only a passing reference, without more, to an accused's post-arrest silence,
> or (2) there is overwhelming evidence of guilt.

> An officer testified at trial that he was assigned the responsibilities of the arresting officer,
> and he made a passing remark on the stand that as part of those responsibilities he
> "attempted to interview the suspect."  Taken in context, the remark was inadvertent and it is
> doubtful that the jury could have interpreted that remark as an indication of McLaughlin's
> failure to testify.

-13-

1    We therefore conclude that the officer's passing remark was, at worst, a passing, inadvertent
2    and consequently harmless comment on McLaughlin's post-arrest silence.

3    Ex. 88 at 4-5 (#30) (footnotes omitted).  A police officer cannot comment on a defendant's post-

4    arrest silence.  Doyle v. Ohio, 426 U.S. 610 (1976).  Doyle error is subject to harmless-error

5    analysis.  Brecht v. Abrahamson, 507 U.S. 619, 629 (1993).  An error is harmless unless it has a

6    substantial and injurious effect upon the jury's verdict.  Id. at 637-38.  The officer testified:

7        I was assigned to be the arresting officer, so I attempted to interview the suspect, gather the
         information from other detectives as they interviewed people and interviewed the victims.
8
9    Ex. 51 at 74 (#29).  The court cannot conclude that the remark had a substantial and injurious effect

10   on the jury's verdict.  By the time of the trial, there was no doubt that petitioner was the assailant.

11   The only issue was whether petitioner had the intent to kill, and petitioner argued for conviction on

12   lesser-included offenses, not for an acquittal.  An officer's mention that he attempted to interview

13   petitioner would have no effect on the question of intent to kill.  Consequently, the error is harmless.

14       Reasonable jurists would not find the court's determination on this ground to be debatable or

15   wrong, and the court will not issue a certificate of appealability for this ground.

16       Ground 6 contains two claims of ineffective assistance of trial counsel.  In ground 6(A),

17   petitioner argues that trial counsel failed to object to the references to the Columbine High School

18   shooting.  The Nevada Supreme Court summarily affirmed the state district court.  Ex. 137 (#32).

19   The district court held:

20       Trial counsel testified that he did not object because the comments did not directly compare
         the offense to the Columbine shootings, but rather explained the tactics the arresting officers
21       used to enter the office.  Trial counsel did not want to highlight the Columbine analogy; such
         an objection, he posited, may have made the situation worse.  Trial counsel's rationale
22       indicates that his trial strategy was sound, and therefore trial counsel was not ineffective.  As
         above, overwhelming evidence presented at trial indicates that, if trial counsel had objected,
23       there would have been no difference in the trial outcome; therefore, even if trial counsel
         were ineffective, Mr. McLaughlin was not prejudiced.

24   Ex. 130 at 4 (#31).  Nothing in the state district court's ruling is an unreasonable application of

25   Strickland.  If the officer or the prosecutor continued to mention the Columbine shootings, or started

26   directly comparing this case to the Columbine shootings, then trial counsel might have objected.

27   However, with the way that the officer stated that they followed a new plan developed after the

28   reviewing the police response to the Columbine shootings, it would have been counsel who would

-14-

1   have brought a comparison to the jury if he objected and argued the point.  Furthermore, the district

2   court's determination of a lack of prejudice in light of the overwhelming evidence also was

3   reasonable.

4       In ground 6(B), petitioner argues that trial counsel failed to properly litigate the issue of juror

5   misconduct: An eyewitness's husband, who also was a retired parole and probation officer, was

6   speaking with one of the jurors.  At trial, trial counsel stated that he was informed by the prosecutor

7   and the bailiff that the juror had contact with the husband of a witness.  Trial counsel further stated

8   that the prosecutor and the bailiff had told him that the topic of the conversation was Northern

9   California.  Trial counsel stated that he accepted those representations and he did not want to single

10  out that particular juror.  Also, the husband was asked not to come back to the courtroom.  This

11  discussion on the record reflected an earlier, unrecorded discussion in the judge's chambers and an

12  unrecorded discussion between petitioner and trial counsel.  Ex. 50 at 148-50 (#29).  At the state

13  habeas corpus evidentiary hearing, trial counsel's testimony reaffirmed his statements at trial.  He

14  also testified that the juror in question was the only African-American juror, and he did not want the

15  prosecution to have the opportunity to have the juror dismissed.  Ex. 125 at 20 (#31).  The Nevada

16  Supreme Court summarily affirmed the state district court.  Ex. 137 (#32).  The state district court

17  held:

18      Mr. McLaughlin argues that trial counsel failed to properly address the issue of a juror who
        had contact with a witness's husband, who was also a retired Parole and Probation officer.
19      The conversation apparently consisted of small talk regarding Northern California.  Trial
        counsel did not seek to replace the juror, nor did counsel request an evidentiary hearing on
20      the issue of whether the contact affected the juror's impartiality.  Trial counsel stated that he
        did not want to draw unnecessary attention to the juror, and that he was satisfied with the
21      representations of the prosecutor and of the court bailiff that the conversation had nothing to
        do with the substance of the case.  First, trial counsel's decision not to challenge the juror
22      was a reasonable, strategic decision.  Second, Mr. McLaughlin presents no evidence that had
        trial counsel taken some action the outcome of the trial likely would have been different.

23

24  Ex. 130 at 4 (#31).  Petitioner argues that counsel should not have accepted the representations of

25  the prosecutor and of the bailiff, given the possible prejudice involved, but petitioner does not

26  explain how he could have suffered prejudice.  Even if this particular juror was replaced, the

27  evidence against petitioner was so strong that a different juror would not have made a difference.

28  Petitioner also argues in the reply (#63) that trial counsel's race-based strategy was unreasonable.

1    Jurors may not be excused peremptorily solely because of race.  Batson v. Kentucky, 476 U.S. 79

2    (1986).  Trial counsel expressed a concern that if the juror was questioned, the prosecution would be

3    able to have the juror excused for cause, thus avoiding any Batson problems.  Petitioner now argues

4    that trial counsel's concern of the prosecution circumventing Batson itself is a Batson violation.

5    Even if petitioner's argument is correct, petitioner still has not demonstrated any prejudice in light

6    of the evidence against him.  The state district court reasonably applied Strickland.

7          Reasonable jurists would not find the court's determination on either component of this

8    ground to be debatable or wrong, and the court will not issue a certificate of appealability for this

9    ground.

10         Ground 7 is a claim of ineffective assistance of appellate counsel because appellate counsel

11   did not raise the issue of juror misconduct in ground 6(B).  Again, the Nevada Supreme Court

12   affirmed the state district court summarily.  Ex. 137 (#32).  In state court, in addition to this claim of

13   ineffective assistance of appellate counsel, petitioner raised other claims of ineffective assistance of

14   counsel that he has not raised in this court.  The state district court held:

15         Mr. McLaughlin has presented no evidence on these issues, and this court cannot rely on
           vague allegations of impropriety to support a claim of ineffective assistance. . . .
16         Furthermore, as noted above, appellate counsel is not required to bring every possible
           issue. . . .  Even if appellate counsel had raised these issues, Mr. McLaughlin cannot
17         demonstrate that the result would have been different.  This Court finds that the assorted
           claims for ineffective assistance of appellate counsel presented in Mr. McLaughlin's petition
18         are without merit.

19   Ex. 130 at 5 (#31) (citations omitted).  The state district court identified the governing principle of

20   federal law that appellate counsel need not raise every non-frivolous issue on direct appeal.  See

21   Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  Furthermore, as with every other claim of ineffective

22   assistance of counsel, in this action, the state district court reasonably concluded that petitioner

23   could not demonstrate prejudice in light of the evidence against him.

24         Reasonable jurists would not find the court's determination on this ground to be debatable or

25   wrong, and the court will not issue a certificate of appealability for this ground.

26         Ground 8 is a claim of a due process violation when the judge failed to follow the required

27   procedures after petitioner filed a sufficient motion for the judge's disqualification.  The Due

28   Process Clause of the Fourteenth Amendment requires the disqualification of a judge only in the

-16-

1    most extreme cases of bias.  Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986).  On this issue,

2    the Nevada Supreme Court held:

3            The district court did not abuse his discretion by failing to follow procedures in NRS 1.235,
         because McLaughlin did not show implied bias, or instances of actual bias by the judge in
4        denying his proper person motions.  McLaughlin contends that the district court judge's
         refusal to recuse himself without following the procedures of NRS 1.235 warrants an
5        automatic reversal of McLaughlin's convictions.  McLaughlin further asserts that the
         procedures in NRS 1.235 are clear and mandatory.  We do not disagree with McLaughlin's
6        latter contention.  However, NRS 1.235 must be read in conjunction with NRS 1.230, which
         requires the existence of actual or implied bias before a judge may be disqualified.

7
         The party moving for recusal has the burden to present sufficient grounds warranting recusal.
8        The party seeking recusal must demonstrate either the judge's actual bias against a party or
         evidence to support a reasonable inference of bias.  This court has held that a judge's refusal
9        to recuse himself is not error where a criminal defendant fails to show improper motive or
         instances of actual bias by the judge.  Where a motion for disqualification "states no legally
10       cognizable ground justifying . . . disqualification" then "it is wholly insufficient, as a matter
         of law, to warrant a formal hearing" under NRS 1.235.  Further, failure of a district court
11       judge to follow the procedure mandated in NRS 1.235 is harmless error without a showing
         of actual or implied bias.

12
         McLaughlin filed a motion to remove the district court judge, citing only the judge's denial
13       of his motion for new counsel and also the judge's denial of McLaughlin's subsequent
         proper person motions.  McLaughlin's proper person motions were opposed by the State.
14       McLaughlin alleged in his supporting affidavit that the district court judge should be
         disqualified because the judge denied his proper person motions, and that "in the interests of
15       fairness," removal was necessary to maintain "public confidence in the administration of
         justice."  Implied in McLaughlin's affidavit was that the judge would continue to deny
16       McLaughlin's motions so long as McLaughlin proceeded in proper person.  McLaughlin,
         however, did not allege or show implied bias, or instances of actual bias by the district court
17       judge.  Nor did McLaughlin allege that the judge erroneously or arbitrarily ruled on his
         proper person motions.

18
         Further, the district court judge held a hearing and allowed McLaughlin to provide a
19       foundation for his allegations of bias and prejudice.  McLaughlin merely stated that he
         wanted more leeway to defend himself.

20
         McLaughlin's affidavit did not meet the burden to show bias or prejudice under NRS 1.230,
21       and therefore he was not entitled to the procedural safeguards provided under NRS 1.235.
         Therefore, NRS 1.235 did not apply and the district court judge did not err in refusing to
22       recuse himself from the case without filing a written answer to McLaughlin's affidavit.

23   Ex. 88 at 2-4 (#30) (footnotes omitted).  The rule expressed in Lavoie is a rule of the broadest

24   generality.  As the Court later explained, "the Due Process Clause of the Fourteenth Amendment

25   establishes a constitutional floor, not a uniform standard."  Bracy v. Gramley, 520 U.S. 899, 904

26   (1997).  Consequently, the Nevada Supreme Court has the greatest leeway in applying the rule for

27   the purposes of the deferential review of 28 U.S.C. § 2254(d).  Alvarado, 541 U.S. at 664.  The

28   Nevada Supreme Court is the final word on state law, and thus this court accepts that a motion to

-17-

1  disqualify a judge for bias under Nev. Rev. Stat. § 1.235 (2002) must actually allege bias as defined

2  in Nev. Rev. Stat. § 1.230 (2002).[3]  The Nevada Supreme Court is correct that petitioner's motion

3  for removal of the judge contained no allegations of actual or implied bias, just a complaint that the

4  judge was denying his proper-person motions.  See Ex. 32 (#28).  Under these circumstances, the

5  Nevada Supreme Court reasonably applied Lavoie.

6         Reasonable jurists would not find the court's determination on this ground to be debatable or

7  wrong, and the court will not issue a certificate of appealability for this ground.

8         IT IS THEREFORE ORDERED that the second amended petition for writ of habeas corpus

9  (#27) is **DENIED**.  The clerk of the court shall enter judgment accordingly.

10        IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the issue of

11  whether trial counsel provided ineffective assistance by not raising a defense of voluntary

12  intoxication at trial.

13        DATED:  March 31, 2015.

14

15                                                              _____

16                                                              JAMES C. MAHAN
                                                               United States District Judge

17

18

19

20

21

22

23

24

25

26

27  _____

28        [3]The statute has been amended to incorporate the pleading requirement.

-18-