# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL TRACY MCLAUGHLIN

    Petitioner,

vs.

BRIAN WILLIAMS, et al.,

    Respondents.

Case No. 2:11-cv-00884-JCM-VCF

**ORDER**

The court of appeals remanded for the court to consider <u>de novo</u> petitioner's claim in ground 1 of the second amended petition for writ of habeas corpus (ECF No. 27).[1] Petitioner has filed a motion for evidentiary hearing (ECF No. 82), a motion for deposition in lieu of live testimony (ECF No. 83), and a motion for leave to file supplemental pleading (ECF No. 91). Respondents do not oppose the motion for a deposition. Respondents do oppose the other two motions, but their objections are immaterial in light of the court of appeals' instruction that this court review ground 1 <u>de novo</u>.

Even though the court is setting an evidentiary hearing, the parties should consider what further litigation will achieve as opposed to resolving this matter between themselves. The parties are familiar with the facts, and the court will recite them briefly. Petitioner entered a social services office in Henderson. He took out a knife, stabbed three people repeatedly, and split open the head of a fourth person by hitting him with a chair.

---

[1] The document is titled as a first amended petition.

Petitioner always has admitted that he did those things. What he has disputed is whether he had the specific intent to kill the three people whom he stabbed. Specific intent to kill is a necessary element for attempted murder with the use of a deadly weapon. Specific intent is not an element of the lesser-included crime of battery with a deadly weapon. In closing arguments, counsel argued that for each charge of attempted murder with the use of a deadly weapon the jury should find petitioner guilty of battery with a deadly weapon because petitioner did not have the intent to kill. Counsel did not succeed. The jury found petitioner guilty of three counts of attempted murder with the use of a deadly weapon, one count of battery with a deadly weapon, and one count of burglary while in possession of a deadly weapon.

Likewise, in ground 1, petitioner argues that if counsel had pursued the defense that petitioner had no intent to kill because he was voluntarily intoxicated on methamphetamine, then the jury would have convicted him of battery instead of attempted murder. ECF No. 27, at 21.[2]

Although the jury found petitioner guilty on all charges presented to the jury, those were not the only charges that petitioner faced. The prosecution also charged petitioner with being a habitual criminal under Nev. Rev. Stat. § 207.010. Ex. 47 (ECF No. 29-1). At the sentencing hearing, the prosecution presented certified copies of prior judgments of conviction for felonies.[3] The judge declined to impose habitual criminal sentences. He made it clear that this was simply because the sentences available for the underlying crimes were sufficient for petitioner to stay in prison until he was 91, and habitual-criminal adjudication would have added an unnecessary layer of complication. Ex. 61, at 19-20 (ECF No. 29-15, at 6). The minimum consecutive terms that the judge imposed total 54 years. Ex. 63 (ECF No. 29-17).[4]

If the court were to grant relief conditioned upon a retrial, then full acquittal is not a realistic option, at least for the charges of attempted murder with the use of a deadly weapon. The parties

---

[2]Burglary also is a specific intent crime, but petitioner never has alleged that his conviction for burglary should be vacated because he was voluntarily intoxicated. The court does not know if this omission is inadvertent or intentional.

[3]Petitioner does not dispute these felony convictions. Ex. 125, at 36 (ECF No. 31-9, at 37).

[4]Petitioner received credit for the time he spent in jail before sentencing.

know how often a voluntary-intoxication defense works. If the voluntary intoxication defense works for petitioner, then perhaps the jury would find petitioner not guilty of burglary while in possession of a deadly weapon. Petitioner would be convicted of four counts of battery with a deadly weapon. More importantly, the charge of habitual criminality still would exist. The trial judge did not impose habitual-criminal sentences because they were not worthwhile in the circumstances that existed at the time. The circumstances have changed. The state district court could impose four consecutive sentences of 25 years with parole eligibility starting after a minimum of 10 years. See Nev. Rev. Stat. § 207.010(1)(b)(3). Under that sentence structure, the minimum time that petitioner would spend in prison is 40 years.

The parties might note that 40 years is less than 54 years, but that does not take into account that the law governing credits toward an earlier release operates very differently with the sentence that petitioner received and the sentence that petitioner could receive after a retrial. The statute in effect when petitioner committed his crimes gives a person 10 days of credit toward his sentence each month for good behavior. Nev. Rev. Stat. § 209.4465(1) (1999). The statute also provides:

> 7. Credits earned pursuant to this section:
>
> (a) Must be deducted from the maximum term imposed by the sentence; and
>
> (b) Apply to eligibility for parole unless the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole.

Id. If the statute governing a sentence specifically states that parole eligibility starts after a minimum number of years, then the exception in § 209.4465(7)(b) applies, and the credits earned do not apply to eligibility for parole. The exception in § 209.4465(7)(b) applies to the habitual-criminal statute, because § 207.010(1)(b)(3) provides "[f]or a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served." If the statute governing a sentence requires the court to impose a maximum term and a minimum term, without reference to a minimum number of years before eligibility for parole begins, then the exception in § 209.4465(7)(b) does not apply, and the credits earned do apply to eligibility for parole. For petitioner's actual sentences, the exception does not apply to the statutes governing attempts, battery with a deadly weapon, and burglary while in possession of a deadly weapon. Those statutes define

sentences as a minimum term and a maximum term. See Nev. Rev. Stat. §§ 193.330(1)(a)(1), 200.481(2)(e), 205.060(4). The exception also does not apply for the applicable version of the deadly-weapon enhancement for attempt, which required an equal and consecutive sentence to the sentence for attempted murder. Nev. Rev. Stat. § 193.165(1) (1995). Therefore, the credits that petitioner earns under § 209.4465(1) apply to his minimum terms and eligibility for parole.[5] Based upon the court's quick calculations, if petitioner is paroled from each sentence at the earliest possible time, with credits applied to the minimum terms, then he would spend about 40 years in prison. That is not much different from the habitual-criminal sentences with the hard minima for parole eligibility.[6]

The parties also might note that the judge stated at sentencing that his intention was for petitioner to become eligible for parole at the age of 91, which was more than 50 years after sentencing, and that the judgment of conviction stated, for example, "a MAXIMUM term of TWO HUNDRED FORTY (240) MONTHS with a <u>MINIMUM parole eligibility</u> of NINETY-SIX (96) MONTHS." Ex. 63, at 2 (ECF No. 29-17, at 3) (emphasis added). The statutes, not the wording of the judgment of conviction, are what controls. Anything in the judgment of conviction about minimum parole eligibility is surplus language, given that the statutes themselves do not require a minimum parole eligibility. In other words, the sentence that the judge imposed is different from the sentence that the judge intended to impose. The judge structured the sentence that he thought he was imposing by running the terms for battery with a deadly weapon and burglary while in

---

[5] The Nevada Supreme Court decisions on this issue are not published, but that has not stopped prisoners from using them to argue that their sentences are being calculated incorrectly. The court disposed of such a claim in Kille v. Cox, 2:15-cv-00062-JCM-GWF.

[6] Nev. Rev. Stat. § 209.4465 has been amended after petitioner committed the crimes. In the version current as of July 1, 2017, a prisoner now receives an award of 20 days per month for good behavior. Nev. Rev. Stat. § 209.4465(1). However, the credits do not apply to the minimum terms of a person convicted of a category A or category B felony. Nev. Rev. Stat. § 209.4465(8). Petitioner is convicted of category B felonies. Consecutive sentences may now be aggregated, and the credits cannot reduce the minimum aggregate term by more than 58 percent. Nev. Rev. Stat. § 209.4465(9).

The court notes these amendments for the sake of completeness. The statute in effect at the time petitioner committed the crimes governs his accrual of credits. None of the subsequent amendments apply to petitioner unless he has elected to aggregate his consecutive sentences and to have the current version of § 209.4465 apply to him.

1  possession of a deadly weapon; he could have been closer to his stated intent by running those terms
2  consecutively. The judge also could have imposed five consecutive habitual-criminal sentences
3  with minimum parole eligibility after 10 years. Indeed, if this court grants relief, and if petitioner is
4  found guilty on all counts, that might be what happens to petitioner. Whether a harsher sentence
5  would be considered vindictive is uncertain, because it would be in line with what was intended but
6  for the misunderstanding of how § 209.4465 operates. At least one court of appeals has noted that a
7  harsher sentence than the original sentence, when the original sentence was based upon a
8  misunderstanding of the law, might not be an impermissibly vindictive sentence. United States v.
9  Colunga, 786 F.2d 655, 659 (5th Cir. 1986). The law is unclear on that particular matter.

10  The parties should consider what the probable outcome of further litigation will be,
11  assuming for the moment that this court grants relief. For petitioner to receive more lenient
12  punishment, two things must occur. First, on retrial, the jury would need to believe that petitioner
13  was so intoxicated that he could not form intent to kill. Second, on resentencing, the trial judge
14  would need to decide not to impose enhanced habitual-criminal sentences, even though the only
15  reason they were not imposed the first time was because the judge thought incorrectly that the
16  sentences for the underlying crimes were sufficient to keep petitioner in prison until he was 91.
17  There are many possible ways that petitioner would spend the same amount of time in prison that he
18  is spending now, whether he is convicted of the same offenses again or convicted or lesser-included
19  offenses with enhanced habitual-criminal sentences. Finally, given the misunderstanding of how
20  Nev. Rev. Stat. § 209.4465(7) operates, shared apparently by the trial judge, all counsel, and the
21  parole and probation officers, it is possible that relief in this court would lead to petitioner spending
22  more time in prison.

23  What the court has discussed above is a matter for the parties to consider and discuss among
24  themselves. It is not a matter for motions, briefs, objections, etc. in this court. They are events that
25  would occur, if at all, in state court, after the case is out of this court's hands. The only issue truly
26  before this court is de novo review whether trial counsel provided ineffective assistance because
27  trial counsel did not pursue a defense of voluntary intoxication. The court will hold an evidentiary
28  hearing and decide the question if it must. However, in reviewing the case for determining the

pending motions, the court saw possible outcomes in state court that leave petitioner no better, and perhaps worse, than he is now. The court cannot say that those outcomes are so improbable as to not be considered. The matter seems well positioned for a resolution outside of court.

IT IS THEREFORE ORDERED that petitioner's motion for evidentiary hearing (ECF No. 82) is **GRANTED**.

IT IS FURTHER ORDERED that petitioner's motion for deposition in lieu of live testimony (ECF No. 83) is **GRANTED**.

IT IS FURTHER ORDERED that petitioners' motion for leave to file supplemental pleading (ECF No. 91) is **GRANTED**.

IT IS FURTHER ORDERED that this matter shall be placed on calendar in Courtroom 6A on **October 24, 2017, at 10:00 a.m.** for an evidentiary hearing.

IT IS FURTHER ORDERED that: (a) no later than thirty (30) days prior to the hearing, counsel shall confer together either in person or by telephone and shall exchange preliminary exhibit and witness lists, exchange (either in person or via mail or fax) any exhibits not already possessed by opposing counsel, and discuss stipulations as to authenticity and any evidentiary objections; and (b) no later than twenty (20) days prior to the hearing, counsel shall jointly file a consolidated final list of the witnesses and exhibits to be offered by each party and which shall further identify any evidentiary objections raised. No party will be allowed to introduce over objection any witness or exhibit not listed in the final witness and exhibit list, except that a party may file a supplement no later than fifteen (15) days prior to the hearing listing evidence in response to any witness or exhibit identified for the first time in the final list. Any evidentiary objections to specific evidence that can be anticipated in advance of the hearing must be presented by brief motion <u>in limine</u> filed no later than ten (10) days prior to the hearing, and same shall be argued and resolved where practicable at the beginning of the hearing.

DATED: September 20, 2017.

_____
JAMES C. MAHAN
United States District Judge